UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------X
                              :
UNITED STATES                 :    No. 3:20MJ00347(SALM)
                              :
v.                            :
                              :
SOLIMAR RODRIGUEZ GONZALEZ    :    July 9, 2020
                              :
------------------------------X
```

## ORDER RE: MOTION TO COMPEL PRIOR VERSIONS OF AFFIDAVIT

Defendant Solimar Rodriguez Gonzalez ("defendant" or "Gonzalez") has moved for an order compelling the government to produce any prior versions, i.e., drafts, of the affidavit filed in support of the criminal complaint dated April 9, 2020 (hereinafter the "Motion to Produce"). The Motion to Produce was made orally, during the preliminary hearing conducted on May 28, 2020. See Doc. #30. The parties were granted leave to file post-hearing briefing, which has now been received. See Docs. #33, #34, #35. For the reasons set forth herein, defendant's Motion to Produce [**Doc. #30**] is **DENIED**.

### I.   Background

Gonzalez was arrested on April 9, 2020, and charged by way of a criminal complaint. See Docs. #1, #2, #3. The complaint as prepared by the government sought to charge Gonzalez with five counts of Hobbs Act robbery. See Doc. #1 at 1. The Court found probable cause to charge defendant with only two of the five

counts. <u>See</u> Doc. #1 at 1. At the outset of the preliminary hearing, the Court inquired of the government whether it was proceeding on a theory that Gonzalez had committed the substantive offense of Hobbs Act Robbery, or on some other theory. Counsel for the government stated that the government was proceeding on an aiding and abetting theory. At that time, defendant moved to dismiss the complaint, arguing that the government's failure to cite 18 U.S.C. §2, or to expressly assert an aiding and abetting theory in the complaint, is fatal to the validity of the complaint. The Court, after receiving briefing on the issue, denied defendant's motion to dismiss. <u>See</u> Doc. #36. The Court also found that the evidence presented during the preliminary hearing established probable cause for two counts of Hobbs Act robbery under an aiding and abetting theory. <u>See</u> <u>id.</u> at 10.

The evidence presented at the preliminary hearing included the testimony of Federal Bureau of Investigation Special Agent Lisa C. MacNamara ("Agent MacNamara"), and the affidavit she swore to in support of the criminal complaint. On direct examination, Agent MacNamara testified regarding certain errors in the affidavit as filed, and offered corrections. These corrections consisted of changes to dates and telephone numbers that were each incorrect by one digit. For example, the date March 16, 2020, in paragraphs 11, 13, and 34 of the affidavit,

was corrected to March 14, 2020. Following Agent MacNamara's testimony, the government moved to admit the affidavit, with the corrections as testified to by Agent MacNamara. Defendant objected to the admission of the affidavit on several grounds, including that the affidavit was unreliable. At that time, defendant also moved to compel the government to produce any prior versions, i.e., drafts, of the affidavit.

The Court admitted the affidavit into evidence, for purposes of the preliminary hearing only. See Doc. #32.[1] Thereafter, counsel for defendant cross-examined Agent MacNamara regarding the affidavit. Agent MacNamara testified that there may have been more than one draft of the affidavit at issue (Doc. #1-1), but she was unsure because other affidavits had also been prepared in connection with this investigation. Agent MacNamara testified that much of the information contained in the affidavit had been obtained from another affidavit that previously had been drafted in connection with "another part" of this case. Agent MacNamara testified that due to the ongoing pandemic, any draft affidavits would have been exchanged with the prosecutor by email.

---

[1] The Federal Rules of Evidence "do not apply to ... a preliminary examination in a criminal case[.]" Fed. R. Evid. 1101(d)(3).

The parties filed simultaneous briefs on the Motion to Produce, and defendant filed a further response to the government's brief. <u>See</u> Docs. #33, #34, #35. The motion is now ripe for the Court's consideration.

## II.   <u>Applicable Law</u>

After a government witness "has testified on direct examination," the Jencks Act requires that "on motion of the defendant," the government produce "any statement ... of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. §3500(b). The Jencks Act defines the term "statement," as relevant here, as "a written statement made by said witness and signed or otherwise adopted or approved by [her.]" <u>Id.</u> at (e)(1) (alteration added).

Federal Rule of Criminal Procedure 26.2 effectively incorporates the Jencks Act into the criminal rules. <u>See</u> <u>United States v. Scotti</u>, 47 F.3d 1237, 1249 (2d Cir. 1995) ("The procedural requirements for making a motion for production and the definition of 'statements' essentially track those of the Jencks Act.").

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in

their possession and that relates to the subject matter
of the witness's testimony.

Fed. R. Crim. P. 26.2(a). Rule 26.2 defines the term
"statement," in pertinent part, as "a written statement that the
witness makes and signs, or otherwise adopts or approves[.]"
Fed. R. Crim. P. 26.2(f)(1).[2]

## III. <u>Discussion</u>

Defendant contends: "Each version of the affidavit approved
by the witness and each email or other correspondence written by
the witness constitutes her statement." Doc. #34 at 2. The
government contends just the opposite: "Any draft affidavit in
support of the criminal complaint was not signed by Special
Agent MacNamara, and the very nature of a draft affidavit is
that it is not adopted or approved until it is signed." Doc. #33
at 6. In support of its position, the government relies on a
string of cases from both within, and outside of, the Second
Circuit. <u>See</u> <u>id.</u> at 7-8. Defendant attempts to distinguish those
cases, asserting that Agent MacNamara's emails accompanying any
draft affidavits are part of the "agent's statements[]" and
should be produced to "help to clarify whether the writer
approved the draft or not." Doc. #35 at 3. Defendant also

---

[2] "Rule 26.2(a)-(d) and (f) applies" to a preliminary hearing
"unless the magistrate judge for good cause rules otherwise in a
particular case." Fed. R. Crim. P. 5.1(h)(1). The undersigned
did not "rule[] otherwise" in this case, and therefore Rules
26.2(a) and 26.2(f) apply. <u>Id.</u>

asserts that the drafts of the affidavit "may provide impeachment material for examining the witness and the reliability of the proffered exhibit." Doc. #34 at 3.

Although the Second Circuit has not explicitly addressed the applicability of Jencks or Rule 26.2 to draft affidavits, other decisions provide guidance. Generally, the Jencks Act reaches "only those statements which could properly be called the witness' own words[.]" Palermo v. United States, 360 U.S. 343, 352 (1959). For example,

> handwritten notes are not [the agent's] "statement" within the meaning of Rule 26.2(f)(1). Absent any indication that an FBI agent signs, adopts, vouches for, or intends to be accountable for the contents of the notes, the rough notes taken in a witness interview cannot be considered the agent's statement. United States v. Gotchis, 803 F.2d 74, 77-78 (2d Cir. 1986).

Scotti, 47 F.3d at 1249.

Here, there is no evidence that Agent MacNamara signed any prior draft of the affidavit. Indeed, the government represents that she did not. See Doc. #33 at 6. Defendant does not appear to dispute this representation. Accordingly, the focus of the Court's inquiry turns to whether Agent MacNamara "approved" or "adopted" any draft affidavit sent to the prosecutor by email.

The Second Circuit has noted that "it seems" Rule 26.2(f)(1) "contemplates writings that the witness has in some manner vouched for." Gotchis, 803 F.2d at 77. Other courts have noted that for a witness to approve or adopt a writing, "the

6

witness must, in some manner, affirmatively express his assent to the content of the writing." United States v. Walden, 465 F. Supp. 255, 260 (E.D. Pa. 1978), aff'd, 590 F.2d 85 (3d Cir. 1979).

The District of Columbia Circuit Court has addressed the issue of whether draft affidavits constitute a "statement" as defined by the Jencks Act. See United States v. Thomas, 97 F.3d 1499, 1501 (D.C. Cir. 1996). In doing so, the Court "offer[ed] a word of caution[:]"

> Not everything a witness has written constitutes his "statement" within §3500(e)(1). The Jencks Act does not apply unless the witness has signed or otherwise adopted or approved the writing. Apparently neither Somers nor Fitzpatrick signed their drafts. Exactly when in the drafting process they adopted or approved what they had written is not clear. Drafts may be tentative. If the drafting is done on a word processor, for example, it would be foolish to think that each time the witness-to-be adds something to or deletes something from what appears on the screen, he has thereby created a new Jencks Act "statement." The author may reserve judgment about his draft until he reviews it in final, signifying his approval only when he affixes his signature to the completed document. Cf. United States v. Walden, 578 F.2d 966, 970 (3d Cir. 1978). If so, only the final document qualifies as a statement under §3500(e)(1).

Id. at 1502. Defendant attempts to distinguish the cases on which the government relies, including Thomas, arguing that those cases "largely predate the prevalence of email usage[,]" and that the emails from Agent MacNamara to the prosecutor "likewise constitute the agent's statements" and should be produced. Doc. #35 at 3; see also Doc. #34 at 2 ("Each version

of the affidavit approved by the witness and each email or other correspondence written by the witness constitutes her statement.").

Defendant's attempts to distinguish the cases relied on by the government are not persuasive. Thomas used word processing as an "example" and the context within which the Court used that example is just as applicable to a modern process conducted by email. Thomas, 97 F.3d at 1502. There is no basis on which to infer that Agent MacNamara intended to approve or adopt the contents of the affidavit until it was sworn to and signed before the undersigned. See id. ("The author may reserve judgment about his draft until he reviews it in final, signifying his approval only when he affixes his signature to the completed document.").

In a somewhat similar context, the Ninth Circuit has found that a handwritten draft of an agent's report was not Jencks Act material. See United States v. Kaiser, 660 F.2d 724, 731-32 (9th Cir. 1981). There, the agent provided a handwritten draft to his secretary for typing, revised the typewritten draft by hand, and then had the draft typed in final form. See id. at 731. Because the handwritten draft was "neither intended as a final statement nor as simply a contemporaneously written factual account of what a witness said[,] ... [i]t was[] ... not 'adopted or approved' by [the agent] within the meaning of 18 U.S.C.

§3500(e)(1)[.]" Id. at 732 (internal citation omitted)
(alterations added). Similarly, here, there is nothing to
suggest that Agent MacNamara intended for any purported draft of
the affidavit to constitute her "final statement[.]" Id. Indeed,
it is reasonable to believe that only the last iteration of the
affidavit, as presented to the undersigned, was intended to be
Agent MacNamara's final statement.

A recent case from the Western District of Washington is
also instructive. In that case, during a preliminary hearing
defense counsel moved to compel the government to produce
"drafts of the complaint and attached affidavit ... pursuant to
the Jencks Act." United States v. Steele, No. 20MJ00252(MLP),
2020 WL 3064230, at *1 (W.D. Wash. June 9, 2020). The Court
denied defendants' motion for several reasons:

> [T]here is no suggestion that any draft of the complaint
> and affidavit are substantially different than the final
> version. Similarly, there are no allegations that
> Special Agent LeCompte intended to approve or adopt
> earlier drafts. Although Defendants assert that he
> "signed or otherwise approved the draft affidavit" when
> he forwarded it to the Assistant United States Attorney,
> Special Agent LeCompte testified that he forwarded it
> for edits before he signed it, indicating he was aware
> the language of the draft could change.

Id. at 2 (footnote and docket citations omitted).

Likewise, here, there is no suggestion that any purported
draft of the affidavit is substantially different from the final
version. Although changes to the affidavit were made during the

preliminary hearing, those changes were not substantive but merely corrections to typographical errors. Moreover, Agent MacNamara "never testified that she adopted, approved, [or] signed[]" any prior drafts of the affidavit. <u>United States v. Artis</u>, 523 F. App'x 98, 101 (2d Cir. 2013). In fact, she testified that she was not certain that there <u>were</u> any drafts of this particular affidavit. "Thus, because [any drafts] were not shown to be signed or otherwise adopted or approved by [Agent MacNamara] and are not a substantially verbatim recital of [Agent MacNamara's] words, the notes do not qualify as a statement under either the Jencks Act or Rule 26.2[.]" <u>Id.</u> (alterations added).[3]

Finally, to the extent defendant requests that the Court review <u>in camera</u> any purported drafts of the affidavit and/or Agent MacNamara's emails, <u>see</u> Doc. #35 at 4, defendant has made no showing that any purported drafts and/or emails contain statements adopted by Agent MacNamara, or that defendant may discover something impeaching or exculpatory in those materials. <u>See</u> <u>United States v. Calhelha</u>, 456 F. Supp. 2d 350, 369-70 (D. Conn. 2006). Therefore, defendant's request for an <u>in camera</u> review is DENIED.

---

[3] Agent MacNamara testified that she collected information from other law enforcement agencies, which was then incorporated into the affidavit.

**IV.**   <u>**Conclusion**</u>

Thus, for the reasons stated, defendant's Motion to Produce [**Doc. #30**] is **DENIED**.

It is so ordered, at New Haven, Connecticut, this 9th day of July, 2020.

```
        /s/
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
```